```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/08/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
 :
ERICA FEBRIANTI, :
 :
 :
                Plaintiff, :    15-CV-0635 (JMF)
 :
    -v- :    OPINION AND ORDER
 :
STARWOOD WORLDWIDE, et al., :
 :
                Defendants. :
 :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Erica Febrianti, proceeding *pro se*, brings a variety of discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against her former employer, Starwood WorldWide ("Starwood"), and some Starwood employees, Tatyana Gritt, Vincent Jerphanion, and Ernest Semexant (the "Individual Defendants" and, with Starwood, "Defendants"). Defendants now move to dismiss, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion is GRANTED.

## BACKGROUND

      The following facts are taken from the Second Amended Complaint (which appears to be the first dozen pages filed as Docket No. 28), the many exhibits annexed thereto, and any factual allegations in Plaintiff's opposition papers that are consistent with the Complaint. *See, e.g.*, *Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013); *Reynolds v. City of Mt. Vernon*, No. 14-CV-1481 (JMF), 2015 WL 1514894, at *1 (S.D.N.Y. Apr. 15, 2015) (noting that courts may consider factual allegations in a *pro se* plaintiff's opposition papers, so long as they are

consistent with the complaint).  Plaintiff was employed by Starwood as a cleaner in the Union Square W Hotel from June 12, 2005, until she tendered her resignation on June 30, 2014.  (*See* Second Am. Compl. (Docket No. 28) ("SAC") 3, 16).[1]  Plaintiff identifies as a Southeast Asian non-Chinese speaker.  (*Id.* at 17).  In December 2008, she filed a complaint with the New York Department of Human Rights ("DHR"), alleging that she had been subjected to discrimination because of her race.  (*See id.*, Ex. 3, at 1-2).  On May 19, 2010, the DHR found that there was no probable cause to support Plaintiff's claim of race-based discrimination because Starwood had offered legitimate, non-discriminatory reasons for the actions about which Plaintiff had complained.  (*See id.* at 8-11).[2]

Plaintiff alleges that in the following years she was subjected to numerous criticisms, comments, and demotions.  For example, she alleges that one colleague told her "we are Dominican and we don't like [you]."  (SAC 4-5).  She contends also that more junior employees received preferential treatment in work assignments and that she was no longer able to enjoy certain work benefits, such as the ability to claim overtime jobs.  (*See, e.g.*, *id.* at 3-4, 7-8, 10-

---

[1]      As noted, Plaintiff attaches many exhibits to her Complaint.  For the sake of simplicity, references to the SAC's page numbers are to the page number generated by ECF.

[2]      As part of her filings in this case, Plaintiff asks the Court to reopen her 2008 DHR case because she was not timely notified of DHR's determination and was unable to appeal to the Equal Employment Opportunity Commission ("EEOC") or state court as a result.  (*See* Docket No. 7; Mem. Law Supp. Mot. To Dismiss (Docket No. 34) ("Defs.' Mem.") 5 n.5).  In her opposition papers, Plaintiff also argues that some of DHR's factual findings were incorrect and that some documents were falsified.  (*See* Opp'n Mot. To Dismiss Sec. Am. Compl. (Docket No. 40) ("Pl.'s Opp'n") 32-41).  Putting aside the question of whether Plaintiff may challenge DHR's findings in this forum, her challenge is untimely given that she had notice of DHR's ruling no later than November 2010 and neither sought review of that ruling nor brought Title VII claims before the EEOC or a federal court.  (*See* First Am. Compl. (Docket No. 3) 12).  Moreover, to the extent that the Court could consider Plaintiff's prior discrimination claims here, they fall well outside of the statute of limitations for Title VII claims and Plaintiff has made no showing that the statute of limitations should be equitably tolled.  *See, e.g.*, *Fellows v. Earth Constr., Inc.*, 794 F. Supp. 531, 534-35 (E.D.N.Y. 1992).

2

11).  She alleges that Defendants disclosed her personnel files to her colleagues, which led to additional hostility.  (*See id.* at 4, 11).  Plaintiff further describes an "incident" that took place on February 28, 2014, when she was accused of violating company policy by soliciting money from her coworkers.  (*See id.* at 8-9).  She alleges that her coworkers made comments that she was a "trouble maker" and accused her of stealing.  (*Id.* at 8-9).  On April 1, 2014, Plaintiff filed another complaint with DHR, claiming that her employer and colleagues had been retaliating against her for her 2008 DHR complaint.  (*See id.* at 8; *id.*, Ex. 1, at 27-30).  (It also appears that Plaintiff made internal complaints to Starwood in March 2014.  (*See* SAC 26)).  On September 22, 2014, DHR found that there was no evidence to support a claim of retaliation.  (*See id.* at 8; *id.*, Ex. 2, at 45-46).  The EEOC adopted DHR's findings on October 27, 2014.  (*See* SAC, Ex. 1, at 26).

On June 19, 2015, some Starwood employees (including Defendant Jerphanion) escorted Plaintiff from the building and told her that she was "under investigation."  (SAC 2).  (Plaintiff does not elaborate on the purported nature of the investigation in her papers).  On June 30, 2015, Plaintiff was asked to resign because she violated company policy by not cooperating with the investigation.  (*Id.* at 3).  Plaintiff decided not to return to work, voluntarily resigning her position.  (Opp'n Mot. To Dismiss Sec. Am. Compl. (Docket No. 40) ("Pl.'s Opp'n") 11; *see* Mem. Law Supp. Mot. To Dismiss (Docket No. 34) ("Defs.' Mem.") 12).  Plaintiff filed a complaint in this Court bringing claims for employment discrimination under Title VII on January 28, 2015, which she amended on February 2, 2015 and again on July 23, 2015.  (*See* Docket Nos. 2, 3, 28).

**LEGAL STANDARDS**

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). Significantly, however, the Supreme Court has made clear that a court should not accept *non-*factual matter or "conclusory statements" set forth in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Instead, a court must follow a two-step approach in assessing the sufficiency of a complaint in the face of a Rule 12(b)(6) motion. *See id.* at 680-81. First, the court must distinguish between facts, on the one hand, and "mere conclusory statements" or legal conclusions on the other hand; the latter are not entitled to the presumption of truth and must be disregarded. *Id.* at 678-79. Second, the court must "consider the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2008)). A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Finally, because Plaintiff is proceeding *pro se*, her pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, a *pro se* litigant must still state a plausible claim for relief. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Put another way, the Court's "'duty to

liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (alteration in original) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61).

## DISCUSSION

Plaintiff brings claims only under Title VII.[3] More specifically, she alleges claims of retaliation, hostile work environment (on the basis of race and sex), and constructive discharge against Starwood and the Individual Defendants. As a threshold matter, to the extent that Plaintiff brings these claims against the Individual Defendants, they must be dismissed because it is well established that there is no individual liability under Title VII. *See, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam) (collecting cases). Additionally, to the extent that Plaintiff premises her claims on conduct and events prior to June 5, 2013, her claims are time barred because under Title VII, a plaintiff who presents discrimination claims to a state agency must file a charge within 300 days of the allegedly unlawful practice to bring suit; in this case, Plaintiff filed her DHR complaint on April 1, 2014. *See* 42 U.S.C. § 2000e-5(e)).[4] The Court turns, then, to Plaintiffs' claims against Starwood that post-date June 5, 2013.

---

[3] In particular, Plaintiff does not bring claims under the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, or the New York City Human Rights Law, N.Y. City Admin. Code 8-101, *et seq.*. Had she done so, her claims would have been barred by DHR's determinations. *See Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013); *Daniel v. T&M Prot. Res. LLC*, 87 F. Supp. 3d 621, 631 (S.D.N.Y. 2015). By contrast, and notwithstanding Defendants' arguments otherwise (*see* Defs.' Mem. 14-16), DHR's determinations do not preclude Plaintiff's federal claims because she did not seek review of the determinations in state court. *See, e.g.*, *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986) ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *accord Joseph v. Athanasopoulos*, 648 F.3d 58, 62 (2d Cir. 2011).

[4] In some circumstances, otherwise time-barred discriminatory conduct may be considered pursuant to the "continuing violation" exception, which applies to discriminatory acts that were part of a continuing policy and practice of prohibited discrimination. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011); *Chukwueze v. N.Y.C. Emps. Ret. Sys.*, 891 F.

**A. Plaintiff's Retaliation Claims**

The most substantial allegations in Plaintiff's Complaint sound in the realm of retaliation. At the motion to dismiss stage for a Title VII retaliation claim, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 318 (2d Cir. 2015). That means that "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 315 (internal quotation marks omitted). Here, Plaintiff's allegations are plainly sufficient to satisfy the first two prongs of the *prima facie* test. First, Plaintiff's 2008 and 2014 DHR complaints obviously qualify as "protected activity," and her alleged internal complaints to Starwood's human resources department arguably do as well. (*See* SAC 26). And second, Defendants do not contest Plaintiff's allegation that at least some of her co-workers and supervisors were aware of her intention to file, and eventual filing of, the DHR complaints. (*See* Defs.' Mem. 20-26).

Thus, Plaintiff's retaliation claims turn on whether the Complaint plausibly alleges that any actions taken by Plaintiff's supervisors or other colleagues constituted "materially adverse" actions causally connected to her protected activities. Significantly, the anti-discrimination and anti-retaliation provisions of Title VII "are not coterminous." *Burlington N. & Santa Fe Ry. Co.*

---

Supp. 2d 443, 451 (S.D.N.Y. 2012). Plaintiff here has alleged discrete discriminatory acts, rather than any discriminatory policy, and so her claims are not subject to the continuing violation exception. *See Lambert*, 10 F.3d at 53 ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."); *Chukwueze*, 897 F. Supp. 2d at 51. Accordingly, any claims based on conduct or events occurring before June 5, 2013, are time barred.

6

*v. White*, 548 U.S. 53, 67 (2006). That is, although Title VII's discrimination provision limits actionable claims to employer activities that affect the terms and conditions of employment, the statute's "anti-retaliation provision applies broadly to 'employer actions that would have been materially adverse to a reasonable employee or job applicant.'" *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *White*, 548 U.S. at 57). A plaintiff, however, must prove "material" adversity, which helps to ensure that Title VII does "not set forth a general civility code for the American workplace." *Id.* (internal quotation marks omitted). Materially adverse actions are those that are "'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination,'" *id.* (quoting *White*, 548 U.S. at 57), and may include "unchecked retaliatory co-worker harassment, if sufficiently severe," *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26-27 (2d Cir. 2014) (internal quotation marks omitted). "Material adversity is to be determined objectively, based on the reactions of a reasonable employee." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011). Further, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted).

Measured against those standards, most of Plaintiff's allegations fall short. Plaintiff alleges a series of scattered incidents of hostility or censure. For example, she alleges that in October 2013 she was assigned to clean a less desirable floor despite her seniority (*see* SAC 10-11); that in February 2014, co-workers made critical comments, such as calling her a "trouble maker" (*see id.* at 8-9); that in the same month, she was charged with violating Starwood's solicitation policy (*see id.* at 27-28); that on April 4, 2014, her "personal information files" were disclosed (*see id.* at 4, 11); that in June 2014, she was forced to provide supplies for her co-

workers, which was not a part of her job (*see id.* at 11); and that on June 22, 2014, one of her co-workers said "we are Dominican and we don't like her," referring to Plaintiff (*see id.* at 4-5). Viewed in context, as they must be, *see White*, 548 U.S. at 69, this handful of isolated incidents across the span of almost one year does not comprise actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. Instead, they fall into the category of "the sorts of petty slights and personality conflicts that are not actionable" under Title VII. *Tepperwien*, 663 F.3d at 571 (internal quotation marks omitted); *see Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 (JMF), 2015 WL 4605684, at *14.

The most compelling of these claims — relating to the disclosure of her personal files and her reassignment to a different floor — fail to give rise to an actionable claim of retaliation for another reason: lack of a causal connection between any protected activity and the adverse employment action.[5] "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. NYC Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Here, Plaintiff included allegations about the disclosure of her personal files in her 2014 DHR complaint,

---

[5]   Defendants contend that Plaintiff has no non-speculative basis to believe that her personal files were ever disclosed. (*See* Defs.' Mem. 24). There is some truth to that contention, although Plaintiff repeatedly alleges that the files were disclosed, and pleads at least one specific incident suggesting that some of her personal information — at least the fact that she filed DHR complaints, which may well have been kept confidential in her files — was shared with her co-workers. (*See* SAC 11 ("The respondent has deliberately revealing [sic] my personal files information to other coworkers. Lorna Goulborne was asking me 'why you filled [sic] the complaint', 'why you did [sic] that', 'I had been discriminated about racial [sic] but I did not filled [sic] the complaint.'")). Accordingly, the Court accepts the allegations as true.

8

making it clear that the disclosure of the files was the reason for the complaint, not the other way around.  (*See* Certification Nicholas A. Duston, Esq. Supp. Defs.' Mot. To Dismiss, Ex. F, at 2).  Plaintiff does not allege that the disclosure of the files followed any statement of her intention to file the 2014 complaint; to the contrary, she contends that the disclosure was in retaliation for her filing of the 2008 DHR complaint.  (*See, e.g.*, SAC 18).  But, ignoring her conclusory assertions, as the Court must, she includes no allegations that would plausibly support a finding of retaliatory animus, and the nearly six-year gap between her filing of the 2008 complaint and the alleged disclosures makes any circumstantial argument implausible.  *See, e.g.*, *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 629 (E.D.N.Y. 2012) (holding that a ten-year gap does not support an inference of retaliation and citing cases where twenty-month and two-year gaps were held to be insufficient).  Similarly, Plaintiff's 2013 floor reassignment could not be retaliation for the April 2014 complaint, and there is no evidence other than Plaintiff's conclusory statements connecting it to the 2008 complaint.

That leaves Plaintiff's allegation that she was falsely accused and implicated in an unspecified investigation — which ultimately led to her resignation.  Facing a false accusation of misconduct that could potentially lead to punishment or dismissal is certainly the kind of retaliation that might dissuade an employee from engaging in protected activity under Title VII.  But Plaintiff's claim on that score falls short on the issue of causation.  Plaintiff offers no direct evidence of retaliatory animus, as Plaintiff's allegations of retaliation are wholly conclusory.  (*See, e.g.*, Pl.'s Opp'n 1 ("[T]he defendants [were] looking for [an] excuse to fire me not because of my lack [of] performance but because of my race and retaliation."), 3 ("I have strongly believed that my protected activity was the real issue of the investigation.  I was targeted [and] under surveillance because of my race and also because I [filed a] lawsuit in federal court,

9

EEOC, [and] DHR.")). Nor does she point to any circumstantial evidence, such as disparate treatment of fellow employees who engaged in similar conduct, that could support an inference of causation. Thus, the only possible basis for a finding of causation would be the temporal proximity between her protected activity and the investigation, as the latter began about two and a half months after Plaintiff filed her 2014 DHR complaint and about four months after she notified Starwood's human resources department about her concerns.

Temporal proximity can certainly provide indirect evidence of causation. *See, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship."); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554-55 (2d Cir. 2001) (noting differences of opinion about whether a span of months suffices as indirect evidence of retaliation). In the absence of *any* other evidence of retaliation, however, the Court concludes that temporal proximity is not enough to "nudge[ Plaintiff's] claims across the line from conceivable to plausible"; Plaintiff's uniformly vague allegations about the events surrounding the investigation and her recommended resignation in no way suggest that the temporal proximity of the investigation to her complaints is anything but coincidence. *Twombly*, 550 U.S. at 570; *see, e.g.*, *Brown v. City of N.Y.*, — F. App'x —, 2015 WL 7252726, at *1 (2d Cir. 2015) (summary order) (affirming dismissal of a retaliation claim where "[t]he time lapses between Brown's protected activities and the alleged retaliatory acts — ranging from two months to several years — were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations"); *Kouakou v. Fideliscare N.Y.*,

920 F. Supp. 2d 391, 401 (S.D.N.Y. 2012) (dismissing a retaliation claim where four months elapsed between the complaint and the adverse action because "it is well settled that when mere temporal proximity is offered to demonstrate causation, the protected activity and the adverse action must occur very close together") (internal quotation marks omitted); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." (collecting cases)); *see also Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). Accordingly, Plaintiff's retaliation claims must be and are dismissed

### B. Plaintiff's Other Discrimination Claims

Plaintiff's other potential claims — alleging sex discrimination, hostile work environment, and constructive discharge — can be more easily and swiftly rejected. First, Defendants are correct that any sex discrimination claim is barred by Plaintiff's failure to exhaust her administrative remedies. (*See* Defs.' Mem. 16-19). A plaintiff bringing a Title VII suit in federal court must first present the claims to the EEOC or the equivalent state agency. *See Littlejohn*, 795 F.3d at 322. Claims that were not so presented may form the basis of a Title VII suit only to the extent they are "reasonably related to the claim filed with the agency." *Id.* (internal quotation marks omitted). Here, as in *Littlejohn*, Plaintiff limited her DHR and EEOC claims to race-based discrimination. (*See, e.g.*, Defs.' Mem. 17; SAC, Ex. 3, at 1-2; *id.*, Ex. 1, at 27-30). In her opposition to Defendants' original motion to dismiss, Plaintiff makes allegations for the first time that she was sexually harassed by two male co-workers. (*See* SAC 33). She did

not reference these incidents in any of her prior filings with this Court or with the administrative agencies, and there is no indication of any connection between the harassment and the allegations she made in her DHR complaints about retaliation and race-based discrimination. Any sex discrimination claim, therefore, fails for failure to exhaust. *See Littlejohn*, 795 F.3d at 322-23.

Second, Plaintiff's hostile work environment claims fail as a matter of law. (*See* Defs.' Mem. 28-30). To prevail on such a claim, a plaintiff must show that his or her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks and alteration omitted). That is, Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Here, Plaintiff fails to plausibly allege behavior so "extraordinarily severe . . . to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). Most of her allegations of mistreatment or unkind comments from her coworkers bear no connection to Plaintiff's race or national origin, despite the fact that she references her co-workers' race and national origin in describing their behavior. (*See, e.g.*, SAC 9-11). The few allegations that arguably do raise an inference of racial animus by no means indicate a severe or pervasive pattern of discrimination, particularly given the time period across which they are spread. (*See, e.g.*, SAC 32 (alleging that a coworker told Plaintiff "I know you don't like white people" and, in 2008, "this is not your country"; *id.* at 34 (alleging that, in 2011, a coworker asked her "are you sure you are not from Cambodia[?]")). That is plainly insufficient to state a hostile work environment claim under Title VII.

Finally, Plaintiff does not plead a viable claim for constructive discharge. (*See* SAC 2-3). As the Second Circuit has explained, constructive discharge "occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Serricchio v. Wachovia Sec. LLC*, 658 F. 3d 169, 185 (2d Cir. 2011). Plaintiff contends that she was constructively discharged because she was told that she was under investigation and that the investigation was a sham that was "created" in order to force her to leave her job. (*See* SAC 2). When she did not cooperate with the investigation, Plaintiff was asked to resign. (*See id.* at 3). The Complaint could also plausibly be read to include the allegations about co-workers' taunts as contributing factors to the constructive discharge. As discussed above, however, conclusory assertions aside, nothing in Plaintiff's voluminous papers suggests that the investigation was intentionally fabricated in order to force Plaintiff to quit. She may have been dissatisfied with her job and on poor terms with her colleagues, but that is insufficient to state a claim of constructive discharge; her conclusory allegations do not cross the line into plausible. *See Twombly*, 550 U.S. at 570; *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360-61 (2d Cir. 1993). Any constructive discharge claim is accordingly dismissed.[6]

---

[6] Defendants also argue that any retaliation claim brought pursuant to the Workers' Compensation Law should be dismissed. (*See* Defs.' Mem. 19-20). The Court does not read Plaintiff's Complaint to raise any such claim, but to the extent that it does, the claims would have to be dismissed because the Workers' Compensation Board is the exclusive forum in which to bring such claims. *See* N.Y. Workers' Comp. Law § 120; *Benjamin v. Health & Hosp. Corp.*, No. 07-CV-2487 (KAM) (LB), 2009 WL 2959622, at *7 (E.D.N.Y. 2009) (dismissing a workers' compensation retaliation claim under the ADA for lack of jurisdiction).

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is GRANTED, and the Complaint is dismissed in its entirety. The only remaining question is whether Plaintiff should be granted leave to amend her Complaint. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, the Court declines to grant Plaintiff leave to amend. First, a district court may deny leave to amend when, as here, amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Second, Plaintiff has already amended her complaint twice — once soon after filing (*see* Docket No. 3) and once when she was granted leave to amend to cure deficiencies raised in Defendant's first motion to dismiss, and was explicitly cautioned that she "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion." (*See* Docket No. 23). (Notably, Plaintiff's amended complaint — nearly seventy pages of largely speculative ramblings — is even less illuminating than her initial two complaints. (*Compare* Docket Nos. 2, 3, and 28).) Moreover, Plaintiff has had numerous opportunities to allege facts in support of her claims — in the two revisions to her original Complaint here, not to mention in her complaints and rebuttal statements in the DHR proceedings — but the allegations have changed markedly little. (*See* Reply Mem. Law Further Supp. Mot. To Dismiss (Docket No. 44) 2-3, 18-20; Docket Nos. 2, 3, 28; SAC, Ex.

1, at 27-30; SAC, Ex. 3, at 1-2).  Finally, although Plaintiff appears to ask for leave to amend (*see, e.g.*, Docket No. 41 at 6, 8, 10), she has not "given any indication that [s]he is in possession of facts that would cure the problems identified in this opinion." *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).

    The Clerk of Court is directed to terminate Docket No. 33, to mail a copy of this Opinion and Order to Plaintiff, and to close the case.

    SO ORDERED.

Date: February 8, 2016  
       New York, New York

_____  
JESSE M. FURMAN  
United States District Judge